# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| ALFRED BOSS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:10CV02330 AGF |
| | ) | |
| DAVE DORMIRE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner

Alfred Boss for a writ of habeas corpus pursuant to 28 U.S.C. ' 2254.   A jury convicted

Petitioner on February 27, 2007, of forcible rape, forcible sodomy, and first-degree

burglary.   He was sentenced on April 4, 2007, to an aggregate sentence of 75 years

imprisonment.   For habeas relief, Petitioner claims that he is actually innocent of the

charged offenses and therefore that none of his federal habeas claims are procedurally

barred, even though he never presented any of them to the state courts.   Those claims

include 11 instances of alleged ineffective assistance of counsel, and two due process

claims.   For the reasons set forth below, federal habeas relief shall be denied.

## BACKGROUND

**Trial**

At trial, 11 witnesses testified for the State: the 71-year old victim, the two nurses

who examined her at the hospital, the police officer who responded to her residence and

later arrested and interviewed Petitioner, another police officer who responded to the victim's residence and was the evidence custodian, two workers from the Missouri Highway Patrol Crime Lab, two acquaintances of Petitioner who were with him before and/or after the crimes, a police officer who arrested and interviewed Petitioner, and a DNA expert. The State's evidence established the following:

On April 2, 2006, the victim was living in a senior citizen's complex, when her cat woke her about 4:30 a.m. The victim saw Petitioner standing in the doorway between the bedroom and kitchen. When the victim attempted to leave the apartment, Petitioner stopped her, put his hand on her mouth, grabbed her by her waist, carried her to the bedroom, pushed her down, and took off her underpants. When the victim struggled, Petitioner put a pillow over her mouth. Petitioner then sexually assaulted the victim, and left, whereupon the victim called the police. Medical personnel found that the victim had abrasions on her face, behind her neck and ears, and on her vagina and rectum.

The police arrested Petitioner on unrelated charges two days later. The arresting officers noticed that Petitioner's jacket matched the description of the jacket worn by the victim's assailant. After the officers advised Petitioner of his rights, he agreed to speak with them. An officer asked Petitioner whether he knew what DNA was and Petitioner stated he did not. The officer explained that DNA existed in the human tissue, hair, blood, and semen, and that DNA could be used to identify a person who had sexual contact with another. The officer asked Petitioner for permission to take a DNA sample from him and he agreed and signed a consent form. The police collected a DNA sample from Petitioner,

and the analysis of the vaginal swab taken from the victim showed that Petitioner's DNA was present on it.

During the interrogation that followed, Petitioner initially denied knowing the victim and denied knowing anything about the incident.   When asked about the night in question, Petitioner said that he was in Jefferson City with his girlfriend, that they watched a movie, ate out, and spent the night in a hotel.   After the officers told Petitioner that they did not believe his story, he admitted being in the victim's apartment.   Petitioner said that he was walking to his father's house and that he saw the victim's door open.   According to Petitioner, he went and asked the victim "to make love" and they had consensual sex.   The officers again told Petitioner that they did not believe him, and he told them that he was drunk at the time of the crimes.   According to the officers, Petitioner then admitted that the victim asked him to leave and that he forced her to have sex with him.   Following the admission, Petitioner agreed to give a written statement.   That statement was illegible. Petitioner then gave the officers an oral statement claiming that he had consensual sex with the victim.

Petitioner, who was the only witness for the defense, testified that the encounter with the victim was consensual.

**Direct Appeal and State Post-conviction Proceedings**

Petitioner raised two points on direct appeal, neither of which is asserted in his habeas petition.[1]   The Missouri Court of Appeals rejected these claims and affirmed the

---

[1]     Petitioner's two claims were that the trial court erred in denying his motion to suppress the statements he made to the police; and overruling his motion to suppress and

judgment and sentences.   In a state post-conviction motion, Petitioner asserted five claims, none of which are asserted in his habeas petition.[2]   The state court denied the post-conviction motion after an evidentiary hearing, and the Missouri Court of Appeals affirmed the denial of post-conviction relief.

**Federal Habeas Petition**

Petitioner does not contend that he previously raised any of the claims he now asserts; rather he argues that he is actually innocent, and that his claims for federal habeas relief can therefore be considered by this Court even though they were procedurally defaulted in state court.   To support his actual innocence claim, he asserts that the jury was never made aware of the following: (1) Petitioner was mentally and/or psychologically challenged; (2) although the perpetrator did not wear gloves, no incriminating fingerprint evidence was recovered; (3) no incriminating pubic hair evidence was recovered; (4) the officers conspired to frame him; (5) the DNA report may not have been properly conducted, and may have contradicted the testimony of the State's expert witness; (6) the DNA report may have been the product of perjury; and (7) the DNA report "would later be

admitting over his objection at trial the results from DNA testing.

[2]   Petitioner argued that defense counsel was ineffective for failing to "raise the issue of forcible compulsion"; failing to advise Petitioner of the ramifications of not accepting a plea offer; conspiring with the State to withhold from the jury Petitioner's alibi and the testimony of three witnesses; and failing to obtain, along with his appellate counsel, Petitioner's version of the facts regarding his *Miranda* rights; and that the State withheld evidence of a DNA lab report.

The post-conviction motion was filed by Petitioner pro se.   Appointed counsel thereafter filed a "Statement in Lieu of Amended Motion," stating that, based upon his review of the record and discussions with Petitioner, he had determined that no potentially meritorious claims had been omitted from the motion.

excluded, or would otherwise come up missing from the court's records in an effort to further conceal the perjured and conflicting testimony elicited by the State to assist in the framing of [Petitioner]."  Petitioner further contends that his actual innocence is shown by the fact that no evidence was offered at trial which established the forensic methodology of the State's DNA expert witness and therefore, in addition to the false testimony of the witness regarding the DNA report, the court admitted the DNA evidence without proper foundation and by "a potentially unqualified source."

Petitioner then asserts ineffective assistance of counsel, citing the 11 instances of allegedly deficient performance, none of which were presented to the state courts.[3] Petitioner further claims that the State violated his constitutional rights by failing to disclose exculpatory evidence (including that the victim was not wearing eyeglasses at the time of the crimes), and by framing him.

---

[3]    Petitioner claims that he received constitutionally ineffective assistance of trial counsel in that appointed counsel failed to (1) diligently seek an independent mental and/or psychological evaluation of Petitioner, (2) challenge the description of the coat used to connect Petitioner to the crimes, (3) investigate and/or challenge the State's lack of fingerprint evidence, (4) investigate and/or challenge the State's lack of pubic hair evidence; (5) cross-examine the victim with evidence of Petitioner's speech impediment, (6) argue that the police framed him for the crimes, (7) challenge why the prosecutor retrieved DNA evidence from the Missouri State Highway Patrol Crime Laboratory and delivered the evidence to another laboratory for testing; (8) investigate and/or challenge the forensic qualifications and/or methodology of the State's expert witness on DNA testing; (9) examine the DNA comparison report prior to trial and/or seek independent testing analysis.  He further claims that counsel was ineffective for allowing Petitioner to testify at trial when he was aware that Petitioner was mentally and/or psychologically impaired, and could not remember details about the events because he was drunk at the time.

Respondent argues that the habeas petition must be denied in its entirety because Petitioner did not raise any of his federal habeas claims in state court and thus they have all been procedurally defaulted. Respondent maintains that Petitioner cannot overcome his defaults as he has failed to show newly discovered evidence of his actual innocence and he cannot show cause for failing to raise his claims in state court. Lastly, Respondent argues that in any event, Petitioner's claims are meritless.

## DISCUSSION

### Procedural Default

Claims that have not been fairly presented to the state courts are procedurally defaulted and may not give rise to federal habeas relief unless the petitioner establishes "cause for not presenting the claim on post-conviction appeal, and prejudice from the failure, or a fundamental miscarriage of justice-meaning that he is actually innocent." *Storey v. Roper*, 603 F.3d 507, 523-24 (8th Cir. 2010) (citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

In *Schlup,* the Supreme Court recognized that a habeas petitioner could present a claim of actual innocence as a "gateway" to resurrecting procedurally defaulted claims of constitutional error which occurred in the underlying trial, but "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioners asserting innocence as a gateway to defaulted claims must establish that in light of new

6

evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

The Supreme Court explained in *House v. Bell*, 547 U.S. 518 (2006), that the *Schlup* standard "is demanding and permits review only in the 'extraordinary' case. At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence." *House*, 547 U.S. at 538 (citations omitted). And more recently in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013), the Supreme Court reaffirmed that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin*, 133 S. Ct. at 1931.

Here, the Court concludes that Petitioner has not made a showing of actual innocence, either as a freestanding claim,[4] or as a gateway to excuse his procedural defaults. First, none of Petitioner's evidence in support of this claim is new evidence. "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'" *Cagle v. Norris*, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting *Schlup*, 513 U.S. at 316); *see also Rice v.*

---

[4]    In *McQuiggen*, the Supreme Court stated that it had "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggen*, 133 S. Ct. at 1931. The Court has established, however, that the threshold for any such claim, if it were recognized, would be "extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). The threshold, if it exists, would require "more convincing proof" than the "gateway" standard that allows for consideration of otherwise defaulted constitutional claims upon a showing of actual innocence. *House*, 547 U.S. at 555.

*Wallace*, No. 4:11CV00319 SNLJ, 2014 WL 752529, at \*43 (E.D. Mo. Feb. 25, 2014);

*Epkins v. Norman*, No. 4:11 CV 1546 DDN, 2014 WL 51353, at \*4 (E.D. Mo. Jan. 7,

2014).

And second, the Court cannot say that even if all the evidence Petitioner asserts

should have been presented at trial was presented, it is more likely than not that no

reasonable juror would have found petitioner guilty beyond a reasonable doubt.[5]

In sum, the Court concludes that all of Petitioner's claims are procedurally barred

from consideration on their merits because Petitioner did not properly raise them in state

court and did not demonstrate either cause and prejudice, or actual innocence, sufficient to

avoid that bar. Furthermore, the Court does not believe that reasonable jurists might find

the Court's ruling debatable or wrong, for purposes of issuing a Certificate of Appealability

under 28 U.S.C. § 2254(d)(2). *See Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003)

(standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S.

473, 484 (2000)).

<u>CONCLUSION</u>

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Alfred Boss for a writ of habeas

corpus relief is **DENIED**.

---

[5]     The Court notes that in his traverse, Petitioner makes an oblique reference to
ineffective assistance of counsel as cause to excuse his procedural defaults. It is not clear
whether he means his direct appeal counsel and/or his post-conviction counsel. He does
not present any argument as to how these attorneys were ineffective, and upon review of
the record, the Court finds no ineffectiveness on the part of these attorneys, under the
standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 7th day of March, 2014.